***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Holmes and the briefs and arguments on appeal. The Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the hearing on 11 January 1999 as:
 STIPULATIONS
1. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged injury by accident, the Employer employing the requisite number of employees to be bound under the provisions of the Act.
2. The employer-employee relationship existed at the time of the alleged injury by accident.
3. Zurich-American Insurance Company was the carrier on the risk during the time period relevant to this claim.
4. Plaintiff's average weekly wage at the time was $272.40. This amount yields a compensation rate of $181.61 per week.
 ***********
Based upon the competent evidence of record, the undersigned makes the following additional:
 FINDINGS OF FACT
1. On 7 August 1997, plaintiff was employed by defendant-employer as a "trim and examine inspector" when she sustained the onset of an admittedly compensable occupational disease. A job analysis describing the duties of a trim and examine inspector position and a job videotape were introduced into evidence.
2. The first medical treatment directed by the employer was to Dr. Richard L. Young, a board certified orthopedic surgeon in Clinton. Dr. Young initially saw plaintiff in October, 1997 and diagnosed her with work-related bilateral carpal tunnel syndrome (CTS). He recommended a surgical carpal tunnel release. At the time, Dr. Young also reviewed the job analysis that has been admitted into evidence in this case and believed that plaintiff could ultimately return to work in the same job after surgery.
3. Plaintiff's surgery took place on 29 October 1997. Following a period of recovery after surgery, Dr. Young examined plaintiff on 18 December 1997. At this visit, plaintiff was accompanied by a nurse case manager, Ms. Lynn L. Powell. Ms. Powell had reviewed the job analysis with plaintiff prior to Dr. Young's entering the examining room on that day and plaintiff signed the job analysis, thereby agreeing that it accurately depicted her job duties. Dr. Young then reviewed the job analysis again and indicated plaintiff could return to light duty work (consisting of less than 8 hours) in that position as of 5 January 1998.
4. Plaintiff did not show up for the light duty job that was to begin 5 January 1998. On that day, plaintiff went to see Dr. Eddie N. Powell, a general practitioner. Dr. Powell gave plaintiff a note stating she was unable to work in any capacity from that date until 5 February 1998. Dr. Powell admitted that at the time of this examination he did not have any information about the type of work plaintiff performed.
5. After plaintiff presented the out of work note to the employer on 6 January 1998, she was advised by the defendant-employer that treatment by Dr. Powell was unauthorized and that she was to return to Dr. Young for further evaluation.
6. Before returning to see Dr. Young, nerve conduction studies were performed on 7 January 1998 and were interpreted by Dr. Aneel N. Patel. Dr. Patel's impression was that the 1998 studies showed a significant improvement in both hands from previous studies. He stated that the studies tended to show that the right hand had returned to within normal limits.
7. Plaintiff returned to see Dr. Young on 22 January 1998. At that visit he found her to have full range of motion and full sensation in all of her digits. Because she was continuing to complain of severe pain, Dr. Young thought she was malingering. He released her to full duty work at that point in the job she was doing with defendant-employer without restriction. A work note was issued allowing plaintiff to return to work on 23 January 1998. At the time, Dr. Young was not aware of the 7 January 1998 nerve conduction studies, but after reviewing them at a later date he felt that the results supported his opinion that plaintiff had clinically improved, that she was complaining excessively, and that she could return to work in her pre-injury job. Dr. Young disagreed with Dr. Powell's opinion and Dr. Powell's note to the effect that plaintiff was totally disabled and unable to work as of 23 January 1998
8. Dr. Young assigned a 5% permanent partial disability rating based upon her continuing complaints of pain. Dr. Young did not recommend surgery to the left hand.
9. After her 22 January 1998 visit with Dr. Young, plaintiff still did not return to work with defendant-employer. Instead, she again went to see Dr. Powell on 12 February 1998, who again wrote her a note stating she could not work in any employment indefinitely after 5 February 1998. Despite nerve conduction studies showing significant improvement of her condition, Dr. Powell also wrote a letter to plaintiff's counsel advising that her condition was getting worse, not better.
10. Because Dr. Young suggested a second opinion when he last saw plaintiff, the case manager, Ms. Powell, made several attempts to find another doctor to examine plaintiff, including Dr. Thomas Parent, a surgeon, and Dr. Bettendorf, a physiatrist. At plaintiff's request, a second opinion appointment was scheduled for 16 March 1998 with Dr. Robert Lacin, a neurosurgeon in Goldsboro, who specializes in peripheral nerve surgery.
11. After examining plaintiff, and reviewing the job analysis admitted into evidence, Dr. Lacin agreed with Dr. Young's assessment of 5% permanent partial disability based upon what he felt was a good neurological recovery from her CTS condition. Dr. Lacin also felt that plaintiff had no functional limitations secondary to her right CTS condition, and could therefore return to work in the trim and examine inspector position at the time of his examination. Dr. Lacin also opined that if plaintiff elected not to undergo surgery to her left hand that she would have a 3% permanent partial impairment to that hand.
12. Even after plaintiff's second opinion physician, Dr. Lacin, stated that he agreed with Dr. Young's full duty work release, plaintiff still refused to return to work in her former position with the employer.
13. An Administrative Decision and Order filed on 15 April 1998 by Special Deputy Commissioner Yvonne E. Bullock concluded that defendants were entitled to terminate plaintiff's temporary total disability benefits effective 23 January 1998.
14. On 16 October 1998, plaintiff was examined by Dr. Carol Epling, an occupational and environmental medicine specialist at Duke University. Dr. Epling opined that plaintiff should not return to work in the trim and examine inspector job, but she did believe plaintiff would certainly be able to return to work in some capacity.
15. Given that Dr. Young was plaintiff's treating physician throughout, and given the experience in the field enjoyed by Dr. Young and Dr. Lacin relative to Dr. Powell and Dr. Epling, the undersigned gives greater weight to the opinions of Dr. Young and Dr. Lacin than to the opinions of Dr. Powell and Dr. Epling.
16. Plaintiff's refusal to return to work in her trim and examine inspector job was unjustified.
17. Plaintiff has not worked, nor sought work, since her last day with defendant-employer in August 1997. Mr. Stephen Carpenter, a vocational rehabilitation expert, felt plaintiff was not presently employable, but the undersigned gives no weight to this testimony based upon the testimony of Dr. Young and Dr. Lacin.
18. Plaintiff has elected not to undergo surgery for her left hand condition. Plaintiff has reached maximum medical improvement to both of her hands.
19. As a result of her occupational disease, plaintiff has experienced a 5% permanent impairment to her right hand and a 3% permanent impairment to her left hand.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The greater weight of the medical evidence shows that plaintiff was able, and has been able, to return to work in her trim and examine inspection job since January 23, 1998. Plaintiff's refusal to return to work in that position is unjustified. N.C.G.S. § 97-32.
2. Plaintiff is entitled to receive permanent partial disability compensation for her 5% impairment to her right hand and her 3% impairment to her left hand. N.C.G.S. § 97-31.
3. Plaintiff is entitled to payment of all medical expenses incurred as a result of her occupational disease, for so long as such treatment tends to effect a cure, give relief or will tend to lessen her period of disability. N.C.G.S. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned makes the following:
 AWARD
1. As a result of her compensable occupational disease, plaintiff is entitled to receive compensation in the amount of $181.61 per week from the defendants for a total of 16 weeks. The number of weeks is the total permanent partial disability payments for 10 weeks for her 5% rating to her right had and for 6 weeks for her 3% rating to her left hand. Said amount has accrued and is to be paid to plaintiff in a lump sum subject to an attorney fee approved below.
2. An attorney fee of 25% of the compensation awarded to plaintiff in paragraph one of this award is approved by the Industrial Commission and is to be deducted and paid directly to plaintiff's attorney.
3. All medical treatment incurred or to be incurred as a result of plaintiff's compensable occupational disease, for so long as said treatment gives relief, effects a cure or lessens plaintiff's period of disability, shall be paid by the defendants.
4. As a result of plaintiff's unjustified refusal of suitable employment, the defendants are not required to pay to plaintiff any temporary total disability payments after January 23, 1998. The Administrative Decision and Order filed on April 15, 1998 by Special Deputy Commissioner Yvonne E. Bullock is AFFIRMED and remains in full force and effect.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER